The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Baylis. This case is our number 4-23-0250. Not sure how to pronounce these names. Bevers and Jacqueline Aframian Family Trust v. Freeport Renaissance, LLC. Counselor for the appellant, would you state your name, please, sir? I'm Counselor Frederick. I apologize. That's okay. Cynthia wrote on behalf of the plaintiff appellant. Thank you. And on behalf of the appellee, please state your name. Good afternoon, Justices. George Hamplist on behalf of the appellee. Thank you, Counsel. And Ms. Roque, you may begin your argument on behalf of the appellant. Thank you, Your Honor. May it please the Court. This case involves a commercial foreclosure in which the plaintiff appellant, Mr. Aframian, agreed to loan funds to the Freeport Renaissance, LLC, so it could avoid foreclosure with its prior lender, Mr. Orderer. As a condition to loaning funds to Freeport Renaissance, LLC, Mr. Aframian required the three members of Freeport Renaissance, LLC, the plaintiff appellee, Ms. Adegachi, I'm sorry, the defendant appellee, Ms. Adegachi, Mr. Eliza, and Mr. Mirabad to personally guarantee the loan by signing a personal guarantee. Freeport Renaissance, LLC defaulted on the loan and the plaintiff appellant filed a foreclosure action against the LLC and filed count four for breach of guarantee against Ms. Fariba Adegachi. A trial was held on plaintiff's claim that Ms. Adegachi breached the guarantee and the trial court ruled that Ms. Adegachi did not sign the guarantee. This appeal follows. The issues in this case are, did the trial court misapply California law by finding that there was ambiguity with respect to the identity of the guarantors under the guarantee? And if not, did the trial court rule against the manifest weight of the evidence in finding that Fariba Adegachi signed the guarantee on behalf of Freeport Renaissance, LLC and not individually? Can I ask, do we also have an issue here? Are you arguing that the second district misinterpreted California law with respect to guarantees in this case? We're not arguing that the second district misapplied the law. We're arguing that at the trial, the law became clear that the law should have been applied to show that there was no ambiguity in the second district looking at the same document found that there was an ambiguity. Is that not the law of the case? That is what the second district held. Yes. Is that the law of the case so that when they went back to the trial court, the court was obligated to start from that premise? I believe we could say the trial court was obligated to start from that premise. But I think then when we look at the facts that were obtained at trial, it became clear that there was no ambiguity. So the second district was wrong. We're not in this case arguing that the second district was wrong. Well, then the law of the case is there's no, there's ambiguity. Our argument is there is no ambiguity because Miss Adachi signed as an individual. Well, following up on Justice Dougherty's question, I'm having trouble understanding how we should deal with this. Was the second district wrong? Or was it not? We are not arguing that the second district was wrong. So then the law of the case is there is ambiguity present in the document. Is that correct? Um, our argument would be that things would be a lot more expeditious. And it would be a big help to us. If when I answer a question, ask the question calls for a yes or no answer, you would give me that answer. So let me try again. The second district said that this document was ambiguous. Is that the law of the case? I believe, because we did not appeal that decision, that that would be the law of the case. Did they send it? I'm sorry, go ahead. Did they send it back for the trial court to clear up the ambiguity? Is that what you're trying to say? Yes, Your Honor. Yes, Your Honor. But the law of the case is that there was an ambiguity. That was what the second district ruled. That is correct. Okay. Go ahead. The facts in this case are that Mr. Elizada came to Mr. Aframian and requested a loan, which would save him and his business partners from personal liability with their current lender, Mr. Orderer. Mr. Aframian immediately made clear that he required individual personal guarantees from all of the LLC members, as he required for all loans, as is articulated on the record. Email correspondence between Mr. Elizada's employee at E&E Mortgage, Mr. Santos, and Mr. Aframian confirmed that the guarantee was a blanket personal guarantee with all three members guaranteeing the loan. Well, that may have been their intention. Why does the guarantee agreement, putting aside the signature lines, constantly refer to only the LLC as the guarantor? If we put aside the signature lines, which I think are a huge issue in this, the document... Let's examine each and then understand the significance of each. Sure. So, Ms. Adegachi testified that she did not review the guarantee other than the first page and the last page. And Mr. Aframian testified similar as well. And so... What do they do for a living? Ms. Adegachi is in the real estate business. She's been in the real estate business for quite some time. She's a sophisticated realtor. I believe she's also a broker. And Mr. Efra man... I'm sorry, Mr. Aframian is a jeweler by trade, but he also does loan money. A lot. Often, yes. So, if you could go back to that question of why is it that the body of the document doesn't refer to the three individuals as being personal guarantors? In fact, they're not even mentioned, right? In the body of the document, the individuals are not mentioned. However, there is language relating to individuals that can be liable under the agreement. That is correct. The document was drafted by Mr. Elizada's company, E&E Mortgage, and by his employee, Mr. Santos. But certainly not by the defendants. By Ms. Adegachi? Correct. Well, we would argue that you can infer that the document was drafted by... No, no, that's the answer to the question. Ms. Adegachi did not personally draft the document. Thank you. What's your position on who did and to whom they owed their loyalty? The person who drafted the document was Mr. Santos, who was the employee of Mr. Elizada, who is Ms. Adegachi's business partner in this deal. Mr. Santos' loyalty is to Mr. Elizada, whose loyalty is also to Ms. Adegachi. But the guarantee is intended to protect Mr. Aframian, correct? That's correct. Or actually his trust. That's correct. Is there no significance to the fact that the guarantor is not identified as these three individuals? I think there would be some significance that the beginning of the document does not identify those individuals as the guarantors. However, I think that the end of the document where those individuals, specifically Ms. Adegachi, signed as an individual makes her personally liable because she signed in her personal capacity, making her personally liable. And she knew that she was personally liable because she didn't care if she was personally liable because she was personally liable in the pending foreclosure on Mr. Orderer's loan. And she was just trying to get some additional time to figure this out. So, to figure this out and try to pay off the loans. Well, it doesn't sound like the answer is one crystal clear conclusion from this internally inconsistent document. Why is it that we would not be deferring to the trial court sorting out all of these inconsistencies? Because the trial court, the testimony before the trial court was that Ms. Adegachi admitted in her deposition that she signed the guarantee in this case in her individual capacity. She did this, as I said before, because it gave her another year to make the real estate a profitable investment. And she was already under personally liable from the Orderer loan. So, it would follow that she would agree to be personally liable again to obtain an additional year to make her business profitable. In addition, Ms. Adegachi met with Mr. Aframian to try to avoid personal liability after the LLC defaulted, asking her to let him walk away. There would be no need to ask him to let her walk away if she didn't know that she was personally liable. Furthermore, I mean, is it clear that that was on her own behalf or on behalf of the LLC? She offered to give up her shares to the LLC in order to allow her to walk away. And to allow her to walk away would mean to not make her a individual defendant in this action. In addition, as we previously discussed a little bit, Mr. Elizabeth's employee at E&E against Mr. Adegachi because it was against the manifest weight of the evidence to declare that Ms. Adegachi had no hand in drafting the documents. The trial court's finding that Mr. Elizabeth's employee was acting on behalf of an entity other than the one he was employed by and paid by, which was owned by Mr. Elizabeth, Ms. Adegachi's business partner, was against the manifest weight of the evidence. She allowed Mr. Elizabeth to negotiate the entire deal. And she did not contact Mr. Aframian to advise him that she did not agree to sign documents or that she wanted to negotiate a separate deal relating to any guarantees. Was Mr. Elizabeth more in the nature of a middleman here? Well, he was a member of the LLC. In fact, he owned more of the LLC than the other two members. So, he had a controlling interest in the LLC. So, I don't think that you can say that he's a middleman because he was a member of the LLC who Ms. Adegachi allowed complete control to negotiate the deal to get the funds from Mr. Aframian to pull them out of foreclosure with Mr. Elizabeth. Separating Ms. Adegachi from Mr. Elizabeth and reaching the conclusion that Ms. Adegachi was not a drafter, the court is ignoring the fact that they were business partners, that Ms. Adegachi admitted that Mr. Elizabeth had the authority to act on her behalf, that no one told Mr. Aframian that Ms. Adegachi did not agree to sign a guarantee, and Mr. Aframian testified that if they would have told him that, he would not have funded the loan, that Ms. Adegachi gave Mr. Elizabeth ostensible authority, and it was her responsibility, not Mr. Aframian's, to advise on any limits to the scope of that authority. This is a procedurally and factually complicated case, shown by the second district decision, what was before them, and then the remand and what happened on remand at the trial level. Am I correct that on remand, you had the burden of proof to show that this facially ambiguous guarantee agreement, which was filed by the second district, was intended by the parties to be a personal guarantee? The burden of proof by a preponderance of the evidence was on the plaintiff. I'm pleased by the question carefully, and it would be very helpful if you would give me a direct answer, if you can. Was the issue on remand for the trial court to decide whether or not the guarantee agreement, which the second district deemed to be ambiguous, was intended by the parties to be a personal guarantee? Yes. Okay. You had the burden of proof on that, right? Yes. Now, it seems to me that the trial court struggled with all of this, and I'm not sure that it was convinced and fully understood how all this evidence relates, but it does seem to me that the trial court concluded that whatever happened below, you had met your burden of proof of persuading the trial court that this ambiguous guarantee agreement was intended by the parties to be a personal guarantee. Isn't that what the court ultimately concluded? The court ultimately concluded that Ms. Adegachi signed on behalf of the LLC and not individually, yes. Okay. So, I'll try once again. The court ultimately concluded that you hadn't persuaded it that this ambiguous guarantee agreement was intended by the parties to be a personal guarantee. Isn't that correct? Yes. Now, under these circumstances, and given how involved this was, how can we conclude that that decision by the trial court was unreasonable? I think I've articulated some of the reasons, and I also think that at the end of the trial court's decision, it referred to the sham guarantee defense finding that the trial court's ruling was that although it was an absurd result that the guarantor would be the same entity as the entity that signed the note, that this was okay because it was common practice in California. And our argument is that that's against the manifest weight of the evidence because there was not sufficient evidence to show that in California, sham guarantees are common or that a sham guarantee could even occur in this type of case under Illinois procedural law. But wasn't the only evidence on that fact provided by defendant's counsel, I'm sorry, defendant, and that suggested that it was common. So was there contrary evidence to suggest it wasn't? The plaintiff did have a expert who testified that it did not believe that sham guarantees were common in California. Who's being tricked by the sham guarantee when you have a borrower guarantee their own obligation? Because sham suggests that someone's being tricked, right? Well, the sham guarantee only comes into play in California in cases of non-judicial foreclosures. So if a entity chooses to prosecute a foreclosure as a non-judicial foreclosure, they are then not allowed to try to move forward on a guarantee by the same, if they have already foreclosed non-judicially. So the person that's being tricked would be, I suppose, the borrower who has not had a judicial foreclosure to be able to assert its defenses. But that's not being tricked. That's a negative impact, but they're parties to the agreement. So they're certainly not being tricked as to who the guarantor is, right? It's right in the document. I'm sorry. I believe that they would be the borrowers at that point. Right. The borrower and the guarantor are the same. But I think that the phrase of that being a sham guarantee might be somewhat overly pejorative. There may be a reason for it, but it's not as though it's tricking the lender to something that it doesn't already clearly know. Right. And in this case, that couldn't happen because there is no non-judicial foreclosures in Illinois. But that presumes they know what Illinois law is and these folks are all from California. Correct. But in this case, nobody would have been tricked. There's nobody being tricked in this case. They may have employed a mechanism that was unnecessary, but it would explain why the borrower was listed as its own guarantor. Can you tell me where in the record she acknowledged she was signing individually? Yes. Give me one second here. This is in our response and she... Actually, I think this might be in our reply. The Plaintiff's Council impeached Ms. Adegaci with her deposition testimony in the trial where it was Appendix 352. I'm sorry, 35... Sorry, 535. No, I'm sorry. Again, Appendix 353, where the trial court overruled Ms. Adegaci's counsel when the plaintiff's attorney said, and I want you to turn to page 13. Do you see your signature? Answer, from you, yes. Question. And that's above where it says Fariba Adegaci. Answer, yes. And you signed it in your individual capacity, correct? Answer, yes. Well, that's a legal conclusion, isn't it? It would be an admission of Ms. Adegaci that she signed in her individual capacity. If it were a matter of fact, but not if it were a legal conclusion, correct? Go ahead, ma'am. Correct. Thank you, counsel. You have an opportunity to address this again in rebuttal. Thank you, Judge. So at this time, Mr. Justice, thank you. May it please the court. I'll just jump into it. Unfortunately, we don't have an agreement on the standard of review. And to address some of the justices' comments about, isn't it true that the second district found the agreement, pardon me, found the contract to be ambiguous? The answer is yes, in the affirmative. But more important, the plaintiff itself, the trust, in that underlying appeal, in no less than five places in their brief, argued that the guarantee was ambiguous. So to have the plaintiff appellant now pivot and argue that for purposes of review, the document was unambiguous, and therefore the trial court judge finding an ambiguity, the second district, and the plaintiff itself in the first appeal arguing that it was ambiguous. We conceded the point. And then we went on with our extrinsic evidence. And Justice Stigman was correct. There was a tremendous amount of facts and argument and law presented to our trial court judge. And he was charged with the responsibility of sorting it all out, which he did in a lengthy opinion. As Justice Dougherty points out, the guarantee references Freeport Renaissance throughout. There's no reference whatsoever to the individuals being guarantors. In fact, the Freeport Renaissance appears 15 times and more important in the notice section of the guarantee. It says any notices to the guarantor must be delivered to Freeport Renaissance, not at Fariba Adegechi's address, not at Mark Mabad's address, not at PCH USA LLC address, but the address of Freeport Renaissance. So now we get to the signature blocks, which is the hot issue here on everybody's mind. The very first signature block is PCH. PCH is an LLC formed in California, and it is a member of Freeport Renaissance. Fariba's line appears below it. She does sign it, and next to her name appears the word individually. We concede that point. In her deposition, she was also asked, isn't it true you signed it individually, to which she answered in the affirmative. But later on her deposition, she testified she signed it individually on behalf of the LLC. If the court were to take a look at number 13, which is the operating agreement of Freeport Renaissance, the individual members and managers executed the operating agreement in the same fashion, and the operating agreement refers to those individuals as persons. If we look at the other extrinsic evidence, which we did not have at the time of the second district's review, we look at, for example, the security agreement. It refers to Freeport Renaissance as the debtor, as the guarantor, and the borrower. Now the security agreement is of import to us because it's executed in the exact same fashion as the guarantee, and I would submit to this court that if you were to impute Fariba's signature as her signing the security agreement in her individual capacity, that would be a nullity. Fariba herself, in her individual capacity, does not own the collateral of Freeport Renaissance. She could not have conveyed a security interest in favor of the trust in her individual capacity. By the same token, the promissory note is signed in the exact same fashion as the underlying purported guarantee. Again, the same signature blocks, PCH, Fariba, Mark Merbad. It's clear to me that they're signing as members of this entity because they were not undertaking this debt individually. Everybody knew that. The maker and the borrower was Freeport Renaissance, and that is laid out in the promissory note on at least half a dozen occasions. So what about the rule of construction that says we construe the ambiguity against its drafter? Is the drafter here more closely connected to defendant than plaintiff? No, and let me tell you why. No, Judge Steigman likes direct answers. The answer is no. All right, now I'm going to go with, if you will allow me to tell you why. We put on evidence that E&E, which is an entity closely aligned to the plaintiff, plaintiff is more than just a jeweler. Don't be fooled. In the trial, he testified that he had a $20 million mansion and that he had been engaged in multimillion dollar loans, both to the borrower and the lender, primarily as a lender. E&E had drafted documents for the plaintiff before. We know that it is the it's me or any of the justices, including opposing counsel, go to a bank. The lender is in control of the documents. We don't go to the bank. It may be the tradition. I don't know that we could base our decision on tradition as opposed to the facts. Fair enough. Let me go back to the facts. So E&E was charged with the responsibility of drafting the documents. There's testimony that Behrouz Aframian, the trustee of this trust, gave direction through Michelle, his secretary, to Alan Santos, the employee of E&E, to make changes to those documents, and those changes were made. So a fee was charged for that process. Our expert witness, Alan Wallace, testified it's customary that in California, the borrower pay the fee for the preparation of the documents. Sean or Sharam Elizaddeh, he goes by his moniker Sean, testified that Behrouz told him he did not to spend the money hiring lawyers to draft the documents. So then he asked Sean to do it, and Sean, through E&E, undertook that task and drafted the documents. Thus, Judge Schorsch determined that the documents were drafted on the behest and at the direction of the plaintiff, and therefore, the ambiguities are resolved against the drafter or the person in charge of the drafter. And I believe that is consistent with not only Illinois law, but California law. Counsel, I have a question regarding some of your initial remarks during your argument. Maybe I misunderstood what you were saying, but are you suggesting that in this appeal, there's some disagreement regarding the standard of review? Yes. Early in the appellant's brief, they are asserting a de novo review. At least that's my reading of it. I might be mistaken. And we pushed back and argued, no, this is not a de novo review. De novo reviews are where a contract is unambiguous and clear and concise, and therefore, the appellate court may review the appeal on the basis that the proper review is manifest way to the evidence, which, of course, goes to the issue of whether or not this judge made an arbitrary decision or only an opposite conclusion may be reached, et cetera. I don't need to... Okay. Well, thank you for that because during your rebuttal, I last miswrote about this, and I want to make it clear what the position of appellants is on standard of review. Go ahead, but... Thank you. I'm going to jump to another area where the plaintiff pivoted. And unless somebody interrupts me and gets me on a different track, which is fine, I'm happy to jump subjects. But the whole concept of accommodation party, I think, needs to be addressed. First of all, there was never any theory advanced by the plaintiff appellant on this theory of accommodation. And accommodation, we know, is defined under California UCC law. And we now have the plaintiff speaking, appellant speaking, almost out of both sides of its mouth. And it's a very unique situation. They're pleading the alternative almost. No, we're liable on the guarantee. By the way, you're liable also as an accommodation party. And the accommodation party argument is raised improperly. We cited several cases, including out of this fourth district, Midwest Environmental versus People's Bank and Leon versus City of Chicago, issues not raised and theories not relied upon in trial court cannot be raised for the first time on appeal and are deemed to waive further to permit plaintiffs to argue any other theory and appeal not raised at trial would be grossly unfair to the defendant, et cetera, et cetera. That's another fourth district case of Darnell versus Monticello. But even if the court were to set aside those rulings and say, well, we're going to let the appellant raise this new issue of accommodation party, it's like sticking a round peg in a square hole. It doesn't fit. We know under California UCC law, Section 3419, that only applies to negotiable instruments. A negotiable instrument must be unconditional in order for an accommodation party theory doctrine to apply. Section 3106A of the California Uniform Commercial Code states that unless there is an express condition of payment or that the promise or order is subject to another writing or the rights or obligations or suspect to the promise are stated in another writing, the second and third qualifier take this document out of the definition of unconditional. And as such, this accommodation party theory fails because there are other documents involving the promise, i.e. promissory note, for example, the security agreement, for example. And there's other promises and undertakings involved. So, furthermore, the appellant's reliance on their seminal case that they cited is misplaced. I apologize. It's in their brief, but I don't have it in front of me right now. Oh, I'm sorry. American Security, I believe, is the case for the proposition that the accommodating parties in that case, it was a situation where a corporate borrower signed a promissory note and then its owners also signed right next to the signature. That was a clear case of an accommodation party and accommodation party liability. We don't have that set up here. So, for that reason, I believe that case is not on point. And as such, the whole accommodation party theory doesn't apply. And again, we see the plaintiff appellant pivoting to a brand new theory brought to you in this appeal. And I think for those reasons, it should be rejected. If I could briefly address, I know I'm running out of time, the issue of sham guarantee. And just so we're absolutely clear, we are not asserting that this guarantee was a sham guarantee. Our opinion witness, including other witnesses, testified that because California has very liberal anti-deficiency laws, which other states don't have, unscrupulous or even non-unscrupulous hard money lenders would oftentimes have the borrower sign a guarantee as well so that they could skirt or get around the anti-deficiency laws for non-judicial foreclosures. And we see this pattern not only here and not only in the testimony of was a borrower and a guarantor of some of his own loans that originated in California. And he himself as a lender had listed borrowers with the common denominators of also being guarantors as well. Now, it's not necessarily nefarious. The question was raised by Justice Doherty about, is this really a sham? Maybe that's an overstatement. I think the sham that's being on the borrower, unless they were an unsuspecting borrower and had very little street cred, street wise, that they didn't know what they were signing. But most of these cases, the borrowers know that they're also guaranteeing it and they're fine with it because they're desperate to get the money. Really, the sham is being perpetrated against when it does happen against the state legislature and the judiciary. And that's why there's been a carve out of cases and there are plenty of California law cases on the subject of sham guarantee. And I will that this was a sham guarantee. We're just providing an explanation why you have a borrower and a guarantor under the same roof. Also, pardon me, not conversely. Also, the agency theory is flawed. Never did Fariba Agatechi testify or pronounce that Sean was her agent. The only thing she testified was Sean on behalf of Freeport Renaissance LLC, through his ownership, membership ownership through PCHUSA LLC, had authority to negotiate the terms and conditions of the loan. And he did. In fact, there was further testimony that after the fact, after Fariba signed all of the documents, Behrouz asked for modifications to the promissory note. And Sean made the modifications and signed an addendum that really didn't come up as an issue, nor did the defendant ever raise that as a basis for discharge of her guarantee because the terms changed after she executed the documents. Moreover, this whole exchange between Michelle on behalf of Behrouz Aframi and on behalf of the trust and Alan Santos on behalf of E&E occurred on November 8th of that year. My client had already executed the documents on November 5th. So to the extent Michelle on behalf of the trust says to Alan Santos on behalf of E&E, Behrouz is looking for personal guarantees from everybody. And by the way, we don't like the fact that PCH is listed on the guarantee itself. We want one from you personally, Sean. That information was never conveyed to Fariba. She was not aware that there was a change out of the guarantor on the signature blocks. Again, that was not made necessarily an issue. But let me sum up by saying the concept of ostensible agency, the third party who is relying upon the purported or putative agency must exercise due diligence. And we submit to this honorable court, Behrouz did nothing along those lines. When asked if he reviewed the documents, he said, no, they were too heavy. I don't know what too heavy means. I think he meant too cumbersome. When asked if he retained counsel, no, too expensive. When asked if he met with Fariba in person, no. Did you speak to her? Again, no. Did you ask for a credit application? No. Did you run a credit report? No. Did you do anything to make her think that you wanted a guarantee? No, I just told Sean that. And somehow Sean is supposed to be Fariba's alter ego and therefore impute that knowledge on her after the fact. So for those reasons, we think the whole concept of agency must be thrown out as well by this court. And I'm just going to sum up by saying respectfully that I think Judge Shorst may have gotten it wrong the first time around. I think that the appellate court was correct in that there was an ambiguity because of all of the conflictual factors here and facts. But on the second round, he undertook the task of getting all of the extrinsic evidence, analyzing it, testing the credibility of the parties, including the plaintiff, whom, by the way, he admonished at least once for being evasive during his trial testimony. And he did what I believe to be a thorough job on his decision. Of course, it's easy for me to say because it went my client's way, but I definitely don't that he acted arbitrary or his findings were not based on the evidence or that they were unreasonable or that the opposite conclusion is apparent. I just don't think those factors apply. And that's why I think it's important that we reject the de novo position by the appellant and apply the manifest weight because I think that is a correct standard. And I think those are the correct filters or lens by which we review Judge Schorsch's decision. Thank the court very much for its time and patience this afternoon. Thank you, counsel. Ms. Roe, there will be your opportunity for rebuttal. But as you begin, I want to address the question I raised with counsel about the standard review. Are you contesting that the standard review in this case is whether the decision of the trial court was contrary to the manifest weight of the evidence? You're unmuted. You're muted. I apologize. In our issues presented for review, we say if the issue... Counsel? Yes. That was a yes or no question. Are you contesting whether the standard review in this case is whether the decision of the trial court was contrary to the manifest weight of the evidence? Partially. Okay, go ahead. With regards to our claim that if the trial court misapplied California law by finding there was an ambiguity, we're alleging that would be de novo. With regard to if the trial court did not apply... It wasn't right there. I thought we resolved that that's the law of the case. So, and then in our... And being our issues presented for review, we agree that it's against the manifest weight of the evidence for if there is a ambiguity, correct? Okay, go ahead. Mr. Campelos brought up Ms. Fariba's later on in her deposition after she admitted that she signed in her individual capacity. As noted in our reply, that was never admitted into evidence in the trial court. So, we would ask that this court not consider that because that was not part of the trial. Relating to... Can I ask you a question? Judge Schorsch initially found that the contract did not extend to the defendant. The agreement didn't. Did he find that it was ambiguous or did he find that it was ambiguous the first time? The first time I believe he found... I wasn't the appellate, the attorney in that case, but I believe in the first case he found that it was unambiguous and found in favor of the defendant at that time as well. So, doesn't that mean that your client obtained a reversal of that initial order by arguing explicitly, successfully, that the agreement was ambiguous? Yes. Aren't you stopped from arguing to the contrary now? In filing this brief, we wanted to hit all of the arguments that... I'm going to stop you again. Maybe one of these times I won't have to. That was clearly a question calls for a yes or no answer. You should answer it that way and then to the extent required, explain it thereafter. Do you recall the question? Aren't you stopped from arguing that the by arguing that it was ambiguous? I don't think that we are specifically stopped. No. Thank you. Why not? I don't think we're specifically stopped because that led us to go back to the trial court and have a hearing and to look at the contract with testimony to determine what is or is not ambiguous about the contract. None of that you would have been looking at absent the conclusion that it was ambiguous. That's correct. Anything further, counsel? The only other thing I wanted to bring up was the consistency of Mr. Aframanian's other loans was that he required guarantees, personal guarantees. There's no loan that Mr. Aframian has ever given that was introduced at trial where there was a corporate guarantee. That would explain his expectations, but I think he was penny wise and pound foolish in not hiring a lawyer to make sure that the documents reflected his beliefs. I do believe that Mr. Aframian going forward will hire attorneys to work on his loan documents. Yes. Good counsel. Okay. Well, thank you very much, counsel. Appreciate the arguments both sides have presented here. The court will take this matter under advisement and now stand in recess.